IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Terence D. Myers, #296050, | ) | |
| | ) | C/A No.   5:15-01000-JFA-KDW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Report and Recommendation |
| Head Warden Tim Riley; Associate Warden Gary Lane; Associate Warden Caldwell; and Director Bryan Stirling, | ) | |
| | ) | |
| Defendants. | ) | |

Terence D. Myers, "Plaintiff," is an inmate with the South Carolina Department of Corrections ("SCDC"), and filed this 42 U.S.C. § 1983 action alleging Defendants violated his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment filed on August 27, 2015. ECF No. 24. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[1] on August 28, 2015, advising Plaintiff of the importance of such motions and of the need for him to file adequate responses. ECF No. 25. Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment on November 19, 2015, ECF No. 34, to which Defendants replied on November 25, 2015, ECF No. 35. On December 9, 2015, Plaintiff filed a Sur Reply. ECF No. 39. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because the Motion is dispositive, a Report and Recommendation is entered for the court's review.

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

I. Background

Plaintiff is currently incarcerated at SCDC's Tyger River Correctional Institution ("TRCI"). ECF No. 1 at 2. Plaintiff brought this case on March 2, 2015, alleging the following issues: discrimination, equal protection, double jeopardy, and his mandatory wearing of a pink jumpsuit. *Id.* In the "Statement of Claim" section of his Complaint, Plaintiff begins by setting out the possible punishments inmates face for public masturbation charges under SCDC's policy. *Id.* at 3. Additionally, Plaintiff represents that on October 27, 2011, Plaintiff was charged for exhibitionism "when the officer saw his penis while in his cell in solitary confinement of SMU cell. . . ." *Id.* Thereafter Plaintiff maintains he was sanctioned and served all of his solitary confinement time for the exhibitionism charge. *Id.*

Plaintiff alleges that wearing the pink jumpsuit has caused "negative attention; nose turn ups; [stereotypical] comments; [di]scriminatory acts; (Denial of school, property disposed without due process, denial of prison industries, denial of re-entry programs that prepare you for [society], denial of institutional jobs, [and] chaplin (sic) programs. . . ." *Id.* Plaintiff represents that he must wear the pink jumpsuit in general population, that he is mental health patient, and "the pink jumpsuit has collapse[d] his thought, he looses his train of thoughts[.]" *Id.* Plaintiff maintains that he has "constant dreams and thoughts of his previous rape experience which enforces mental anguish, [and] the pink jumpsuit causes other inmates to view him as a homosexual, confused, a rapest (sic), ect. (sic)" *Id.* at 3-4.

Additionally, Plaintiff alleges that he is "placed in a position to be raped, lust (sic) upon, which causes him to fight other inmates to prove his identity." *Id.* at 4. Plaintiff further represents that "the pink jumpsuit does not promote the prison rape elimination act (PREA) because the prison allows temptation for rapest (sic). The color appears appealling (sic) to the

2

eyes of the lustfull to the loins of suspected rapest (sic)." *Id.* Plaintiff alleges that the prison has subjected him to treatment and conditions that are atypical and significant hardships, and he is "in a dangerous and unstabal (sic) position, which is cruel and unusual." *Id.*

Plaintiff then states what he believes are the respective Defendant's responsibilities within SCDC and alleges Defendants have violated his Eighth Amendment rights based on their deliberate indifference, cruel and unusual punishment, double jeopardy, and discrimination. *Id.* at 4-5. Additionally, Plaintiff alleges that Defendants have violated his Fourteenth Amendment right of equal protection and alleges deprivation of life under the Fourteenth Amendment. *Id.* Plaintiff seeks a judgment granting him compensatory, punitive, and nominal damages, a jury trial on all triable issues, and any additional relief the court deems just, proper, and equitable. *Id.* at 6.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III.    Analysis

    A. Statute of Limitations

Defendants argue that Plaintiff's case is barred under the applicable three-year statute of limitations. ECF No. 24-1 at 11-12. Specifically, Defendants maintain that Plaintiff was convicted of and sentenced on the exhibitionism charge on November 2, 2011, and did not bring the instant action until March 2, 2015—which is several months past the November 2, 2014 expiration of the statute of limitations. *Id.* at 12. The undersigned disagrees.

Though November 2, 2011, was the date of Plaintiff's exhibitionism conviction, his statute of limitations did not begin to run then. Rather, Plaintiff was required to exhaust his administrative remedies before filing the instant action, and while Plaintiff was pursuing his administrative remedies, the statute of limitations was tolled. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), prevents prisoners from bringing § 1983 actions until they have exhausted all available administrative remedies. *See* 42 U.S.C. § 1997e(a), *unconst'l on other grounds*, *Siggers–El v. Barlow*, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). Several circuits with similar tolling statutes "have concluded that federal courts should toll state statutes of limitations while inmates exhaust their administrative remedies under § 1997e." *Saucillo v. Samuels*, No. 0:12-CV-240-TMC, 2013 WL 360258, at *2 (D.S.C. Jan. 30, 2013) (internal citation omitted). Though the Fourth Circuit Court of Appeals has not expressly ruled on whether a plaintiff's time is tolled while he is pursuing his administrative remedies, the undersigned recommends the court adopt the reasoning of the courts that hold statutes of limitations for § 1983 actions are tolled while inmates exhaust their administrative remedies.

Here, the timeline of Plaintiff's administrative remedy exhaustion and what occurred is not entirely clear. However, at least one of Plaintiff's exhibits indicates that Plaintiff filed a

grievance concerning the pink jumpsuit policy on October 17, 2013, and received a response to it on November 20, 2013. ECF No. 1-2 at 1. Plaintiff received another response to his grievance on December 13, 2013. *Id.* at 2. Plaintiff's action would be timely if the statute of limitation commenced on either November 20, 2013, or December 13, 2013. However, in any event, a statute of limitations bar is an affirmative defense, and it is Defendants' burden to demonstrate it is a bar to Plaintiff's action. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 (4th Cir. 2006) ("[T]he statute of limitations is an affirmative defense, meaning that the defendant generally bears the burden of affirmatively pleading its existence."). Here, the undersigned finds Defendants have not met their burden of demonstrating Plaintiff's action is untimely considering Plaintiff's filing time was tolled while he was pursuing his administrative remedies. Therefore, the undersigned recommends denying Defendants' Motion for Summary Judgment based on the untimeliness of Plaintiff's action.

### B. Constitutionality of Pink Jumpsuit Policy

Defendants argue that it is not a violation of Plaintiff's constitutional rights for SCDC to require him to wear a pink jumpsuit after receiving a conviction for an offense that is sexual in nature. ECF No. 24-1 at 10. Defendants cite to a string of cases in support of their position. *Id.* at 10-11. In his Response, Plaintiff does not argue that the policy has not passed constitutional muster but questions the reasons Defendants gave for the pink jumpsuit policy. ECF No. 34. The undersigned will address the merits of each alleged constitutional violation in turn.

### C. Alleged Violation of Plaintiff's Rights

Defendants argue that they are entitled to judgment as a matter of a law because they did not violate Plaintiff's rights. ECF No. 24-1 at 12-13. In this argument, Defendants identify the

specific right Plaintiff alleges was violated and address how their actions did not violate the right in question. *Id.*

        1. Due Process Rights

Defendants maintain they did not violate Plaintiff's due process rights arising under the Fourteenth Amendment because Plaintiff's allegation that the pink jumpsuit constitutes an atypical and significant hardship is without merit. ECF No. 24-1 at 13. In Response, Plaintiff maintains that "not requiring those in similar situations to wear[] the pink jump suit denies the Plaintiff . . . due process." ECF No. 34 at 7. Additionally, Plaintiff contends that "prison officials violated the 14th Amendment under . . . due process by classifying the inmate sexual nature charge with a pink jumpsuit and not classifying the other sexual nature charges (802 & 822)." *Id.* at 8. Finally, Plaintiff represents that Warden Caldwell indicated to him that if he continued to stay out of trouble, then Plaintiff may be considered for a prison industry position. *Id.* at 10. In his Complaint, Plaintiff alleges he was denied school, property, a position in prison industries, re-entry programs, institutional jobs, and chaplain programs as a result of the mandatory wearing of a pink jumpsuit. ECF No. 1 at 3.

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. "In determining whether state officials have deprived an inmate, [] of a procedurally protected 'liberty,' this Court traditionally has looked either (1) to the nature of the deprivation (how severe, in degree or kind) or (2) to the State's rules governing the imposition of that deprivation (whether they, in effect, give the inmate a 'right' to avoid it)." *Sandin v. Conner*, 515 U.S. 472, 493 (1995). "In order to prevail on either a procedural or substantive due process claim, inmates must first

demonstrate that they were deprived of 'life, liberty, or property' by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).

In *Wolff v. McDonald,* the United States Supreme Court established minimal procedural due-process standards for prison disciplinary violation proceedings that may result in a sanction of loss of accrued good-time credits or solitary confinement. 418 U.S. 539, 571 n.19 (1974). Under *Wolff,* in such proceedings, a prison inmate has 1) the right to advance written notice of the charges against him, 2) the right to call witnesses and present documentary evidence in defense of the charges to the extent that institutional order and safety is not compromised, and 3) the right to receive a written statement of the findings of the hearing officer. *Id.* at 564–67; *see also Brown v. Braxton,* 373 F.3d 501, 504–05 (4th Cir. 2004) (defining the *Wolff* requirements). The Court has also found that the same minimal procedural due-process protections are required when a disciplinary sanction violates a prisoner's "liberty interests" by imposing "atypical hardships" on him or her. *Sandin v. Connor,* 515 U.S. 472 (1995) (a change in a prisoner's conditions of confinement that does not exceed the scope of the original sentence gives rise to a federally protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").

Here, Plaintiff claims that the sanctions ordered as a result of his exhibitionism conviction—which include loss of certain property rights—imposed "atypical hardships" on him. ECF No. 1–1 at 4. However, the sanctions ordered do not support the legal conclusion that Plaintiff suffered "atypical hardships." In the case of *Beverati v. Smith*, the Fourth Circuit Court of Appeals held that a punishment of administrative segregation and the conditions of the segregation did not implicate a liberty interest. 120 F.3d 500, 504 (4th Cir. 1997). On that basis, the *Beverati* court affirmed the district court's grant of summary judgment in favor of prison

official on inmates' procedural and substantive due process claims because inmates "possessed no liberty interest in avoiding confinement in administrative segregation . . . ." *Id.* Furthermore, it is settled that a prisoner's due-process rights are not implicated by the imposition of such sanctions. *See e.g., Brawner v. Cartledge*, No. 5:12-CV-1889-RMG, 2014 WL 958658, at *5 (D.S.C. Mar. 11, 2014) *aff'd*, 585 F. App'x 79 (4th Cir. 2014) (holding Plaintiff failed to allege facts sufficient to establish that the conditions or duration of his confinement posed an atypical and significant hardship where Plaintiff alleged that he, along with other prisoners in pink jumpsuits, was placed on early lockdown); *Williams v. Ozmint*, 726 F. Supp. 2d 589, 595 (D.S.C. 2010) ("Plaintiff received every bit of due process he was entitled to during his disciplinary hearing, and merely because the disciplinary hearing officer's final order only stated that Plaintiff is required to wear the pink jumpsuit and did not note every new restriction placed on Plaintiff's everyday prison life because of his new classification as a sexual misconduct offender does not mean he was denied due process.").

Furthermore, the undersigned finds that Plaintiff has failed to put forth any evidence demonstrating that his wearing of the pink jumpsuit has deprived him of employment, education, or other opportunities. In her affidavit Defendant Laura Caldwell, the Associate Warden of TRCI, attests that Plaintiff has not been denied the opportunity to seek educational credits nor has he been denied the opportunity to participate in re-entry programs or prison industry programs based solely on his wearing of the pink jumpsuit. ECF No. 24-2 at ¶¶ 20-24. In fact, Defendant Caldwell avers that Plaintiff is currently participating in an adult education program. *Id.* at ¶ 20. Additionally, Defendant Caldwell offers alternative reasons for Plaintiff's inability to participate in certain programs. *See id.* ¶¶ 20-24. For example, Defendant Caldwell attests that Plaintiff is unable to participate in re-entry programs because his underlying conviction of armed

robbery is a violent offense, and the re-entry program is available only to non-violent offenders. *Id.* ¶ 21. Plaintiff does not specifically respond to Defendant Caldwell's assertions concerning the reasons certain opportunities are available or unavailable to him, and the undersigned finds that Plaintiff has failed to offer any evidence demonstrating he has been deprived of certain opportunities based on his wearing of a pink jumpsuit.

In this instance, Plaintiff has failed to demonstrate that he suffered an atypical hardship based on the punishment he received for exhibitionism. Additionally, Plaintiff does not allege and there is no evidence that Plaintiff was deprived of his procedural due process rights afforded to him under *Wolff*, such as notice, evidentiary rights, and the right to receive a written statement of the hearing findings. 418 U.S. 565–67. Finally, the undersigned finds that no evidence demonstrates that Plaintiff was deprived of an opportunity—such as a prison re-entry program—based on his wearing of a pink jumpsuit. Accordingly, the undersigned recommends granting Defendants' Motion based on Plaintiff's allegation that he was denied substantive or procedural due process.

2.  Alleged Violation of Eighth Amendment Rights

Next, Defendants argue that requiring Plaintiff to wear a pink jumpsuit did not constitute cruel and unusual punishment under the Eighth Amendment. ECF No. 24-1 at 15-18. Although unclear, Defendants interpret Plaintiff's argument as the conditions of his confinement—the wearing of a pink jumpsuit—violate the Eighth Amendment. *Id.* at 15. In his Response, Plaintiff focuses his arguments on due process and equal protection claims. *See* ECF No. 34 at 4. In his Complaint, Plaintiff alleges that Defendants have acted deliberately indifferent and have violated his Eighth Amendment right to be free from cruel and unusual punishment. ECF No. 1 at 4.

9

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney,* 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (internal citations omitted). To state a claim that detention conditions violate constitutional requirements, a plaintiff must demonstrate "both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters,* 174 F.3d 464, 471 (4th Cir. 1999) (internal quotation marks and citation omitted). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (internal citations omitted). As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. *Id.* at 834-37.

Cases in this District have concluded that SCDC's pink jumpsuit policy does not violate the Eighth Amendment. *See, e.g., Williams*, 726 F. Supp. 2d at 594 (adopting the recommendation that sanctions for inmate who committed sexual misconduct offenses while imprisoned were rationally related penological interests and did not amount to cruel and unusual punishment); *Mickell v. Ozmint*, No. 3:08–2973–RBH, 2009 WL 1361873, at *6-7 (D.S.C. May 11, 2009) ("To the extent that Plaintiff is attempting to assert a claim for mental or emotional

injury, his claim fails as there is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims.").

Here, Plaintiff has not demonstrated either a serious deprivation of a basic human need or that prison officials were deliberately indifferent as required to establish an Eighth Amendment claim. Rather, the only evidence before the court indicates that prison officials sanctioned Plaintiff not for the very purpose of causing him harm but based on his valid disciplinary conviction for exhibitionism. *See Whitley v. Albers,* 475 U.S. 312, 320–21 (1986) ("Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."). Based on the evidence before the court and the holdings concluding that SCDC's pink jumpsuit policy does not violate the Eighth Amendment, the undersigned recommends granting Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment violation cause of action.

### 3. Alleged Violation of Equal Protection Rights

Defendants argue that requiring Plaintiff to wear the pink jumpsuit did not violate Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. ECF No. 24-1 at 18-20. In Response, Plaintiff maintains that subjecting him to the "extra sanction" of wearing a pink jumpsuit violates the equal protection clause. ECF No. 34 at 4. Additionally, Plaintiff argues that inmates who commit an 802 sexual assault do not have to wear pink jumpsuits, and prison officials violate the equal protection clause "by classifying the inmate sexual nature

11

charge with a pink jumpsuit and not classifying the other sexual nature charges (802 & 822)." *Id.* at 3, 8.

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* A prisoner can make an equal protection claim if he is singled out as an individual for "intentional and arbitrary discrimination," with no rational basis for such disparate treatment, even if one is not being discriminated against as a member of a certain group. *See Village of Willowbrook v. Olech,* 528 U.S. 562 (2000); *Willis v. Town of Marshall, N.C.,* 426 F.3d 251, 263 (4th Cir. 2005). When equal protection challenges arise in a prison context, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. *Veney v. Wyche,* 293 F.3d 726, 730–32 (4th Cir. 2002). In such instances, a prisoner claiming an equal protection violation must allege facts demonstrating "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination," and the court must determine whether the disparate treatment is "reasonably related to any legitimate penological interest." *Id*. (internal citations omitted).

When a prison regulation allegedly impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *Hause v. Vaught,* 993 F.2d 1079, 1082 (4th Cir. 1993) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). To determine whether a policy or regulation is reasonable, the Court examines four factors: (1)

12

whether the regulation or policy is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising the right; (3) what effect accommodation of the interest would have on guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives with which the prison could continue to serve its interest without impinging on constitutional rights. *Turner,* 482 U.S. at 89-90. Legitimate penological interests include preserving prison security and maintaining order and discipline. *Thornburgh v. Abbott*, 490 U.S. 401, 423 (1989); *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003). Moreover, in noting the difficult and delicate problems of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." 490 U.S. at 408; *see also Altizer v. Deeds*, 191 F.3d 540, 547 (4th Cir. 1999) (holding that a prison rule that impinges on an inmate's constitutional rights is valid if reasonably related to legitimate penological interests).

    Here, Plaintiff maintains only that he and other exhibitionist offenders are treated differently than other inmates who commit different sexual acts. However, Plaintiff has failed to allege or demonstrate that he is part of a protected class of people or that he received treatment different from any other inmate who is found guilty of exhibitionism or public masturbation. Moreover, Plaintiff does not allege or offer any evidence to support an allegation that he was treated differently from others in the prison's general population because of intentional or purposeful discrimination. Plaintiff's broad assertion that that he was denied equal protection without any support or allegation of discrimination is insufficient to survive summary judgment. *White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976) (conclusory allegations insufficient to avoid summary judgment). Furthermore, several courts in this district have held that requiring an

inmate to wear a pink jumpsuit does not violate the equal protection clause. *See e.g., Brawner v. Cartledge*, No. 5:12-CV-1889-RMG, 2014 WL 958658, at *2 (D.S.C. Mar. 11, 2014) *aff'd*, 585 F. App'x 79 (4th Cir. 2014); *Wallace v. Cohen*, No. 8:10-CV-2856-CMC-JDA, 2011 WL 5025213, at *5 (D.S.C. Sept. 27, 2011) *report and recommendation adopted*, No. CA 8:10-2856-CMC-JDA, 2011 WL 5025328 (D.S.C. Oct. 21, 2011) *aff'd*, 471 F. App'x 110 (4th Cir. 2012); *Williams*, 726 F. Supp. 2d at 592.

Even if Plaintiff was able to demonstrate that he has been treated differently than similarly situated inmates, the undersigned finds that the difference in treatment is reasonably related to a legitimate penological interest. The undersigned has examined the SCDC pink jumpsuit policy at issue and the Defendants' justifications for those policies. In support of their Motion, Defendant Caldwell opines that the SCDC pink jumpsuit policy serves a legitimate penological interest because:

> The pink color is very distinctive and allows the correctional staff who are unfamiliar with an inmate to determine the level of threat posed by that inmate. This system allows for new and visiting staff to immediately recognize the potential threat posed by the inmate, as demonstrated by that inmate's behavioral history. The distinctive color also allows for staff to immediately determine whether the inmate is in an area of the facility he should not be in, which served to decrease the security threat posed by these inmates.

ECF No. 24-2 ¶ 16. Additionally, Defendant Caldwell attests that "[t]he pink jumpsuit also provided the staff in the institutions, including both security and support staff, with a quick visual indicator of the prior history of the inmate [that] allowed the staff to take additional precautions with the inmate as may be necessary." *Id.* ¶ 17. Finally Defendant Caldwell avers that the "color also served as a visual deterrent for the inmate's misconduct, as many inmates are unaffected by the traditional sanction of taking away various privileges for a variety of reasons." *Id.* ¶ 18.

Applying the *Turner* factors, several courts in this district have concluded that pink jumpsuits serve a legitimate penological. *Williams*, 726 F. Supp. 2d at 593; *Govan v. Singleton*, No. CA 8:07-3789-MBS, 2009 WL 799649, at *3 (D.S.C. Mar. 24, 2009) *aff'd*, 347 F. App'x 970 (4th Cir. 2009). More generally, however, "maintaining institutional security and preserving internal discipline are essential goals that may require limitation or retraction of the retained constitutional rights." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Based on holdings of our district courts and the reasons offered by Defendant Caldwell for the pink jumpsuit policy, the undersigned finds the policy meets the *Turner* factors and is reasonably related to a legitimate penological interest.

Accordingly, the undersigned recommends granting Defendants' summary judgment motion concerning Plaintiff's equal protection claim.

4. Alleged Double Jeopardy Violation

Defendants argue that requiring Plaintiff to wear the pink jumpsuit did not constitute double jeopardy as contemplated by the Fifth Amendment. ECF No. 24-1 at 21-22. Specifically, Defendants argue that it is well-established that prison disciplinary sanctions do not implicate the Double Jeopardy Clause. *Id.* The undersigned agrees.

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In articulating the scope of the Double Jeopardy Clause, the Supreme Court has stated: "The [Double Jeopardy] Clause protects only against the imposition of multiple *criminal* punishments for the same offense, and then only when such occurs in successive proceedings." *Hudson v. United States,* 522 U.S. 93, 98–99 (1997) (emphasis in original) (citations omitted). Accordingly, courts have concluded the Double Jeopardy Clause does not apply to prison disciplinary actions.

*Wolff v. McDonnell,* 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution . . . ."); *Anderson v. Padula,* No. 0:05–3029–PMD, 2006 WL 1075003, at *4 (D.S.C. Apr. 19, 2006) (concluding the Double Jeopardy Clause was not implicated when the plaintiff was sanctioned twice for one prison disciplinary charge, first through an informal resolution and then through a disciplinary hearing regarding the same charge). Here, though Plaintiff alleges he got "all possible sanctions plus pink jumpsuit" for the exhibition violation, the double jeopardy clause does not extend to prison disciplinary violations and only applies to criminal charges. Accordingly, the undersigned finds Plaintiff's double jeopardy allegations do not implicate the Double Jeopardy Clause and recommends that Defendants' Motion for Summary Judgment be granted as to this claim.

### D. Qualified Immunity

Defendants assert they are entitled to qualified immunity on Plaintiff's claims. ECF No. 24-1 at 22-25. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the

circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff of which they were aware in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends Defendants be granted qualified immunity.

### E. Eleventh Amendment Immunity

Defendants maintain that to the extent Plaintiff seeks recovery against Defendants in their official capacities, Plaintiff's action should be barred under the Eleventh Amendment of the United States Constitution. ECF No. 24-1 at 25-26. The undersigned agrees. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against

17

agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendants were agents or employees of the State of South Carolina when acting in their official capacities, they are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As arms of the State, Defendants, in their official capacities, are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.[2]

---

[2] Defendants maintain that this action is also barred under 42 U.S.C.A. § 1997e(e) which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of a physical injury or the commission of a sexual act [. . .].". ECF No. 24-1 at 26. Based on the above assessment of Defendants' arguments concerning each of Plaintiff's causes of action, it is unnecessary for the undersigned to address the merits of this argument. Therefore, the undersigned recommends the district court grant Defendants' Motion for Summary Judgment based on the reasoning above.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 24, be GRANTED and this action be dismissed.

IT IS SO RECOMMENDED.

January 6, 2016                                                            Kaymani D. West
Florence, South Carolina                                              United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**